ADDISON A. REEVE *vs.* HERBERT E. DENNETT.

Suffolk. March 18, 21. — July 1, 1887. FIELD, C. ALLEN, & GARDNER, JJ., absent.

In an action for fraudulent representations as to the value of shares of stock in a corporation formed to promote the use in dentistry of a compound invented by the defendant, a dentist, the plaintiff's evidence tended to show that the compound was worthless for the purpose of allaying pain, for which it was intended to be used. The defendant was allowed to introduce the evidence of a number of his patients, who testified that the defendant's operations upon their teeth, using his invention, were practically painless, whereas similar operations before had been very painful. *Held*, that the plaintiff had no ground of exception.

At the trial of an action, if evidence is admitted subject to another witness being called to prove a certain fact, and the case is closed without the witness being called, and the adverse party makes no request to have the evidence stricken out or the jury instructed to disregard it, he has no ground of exception.

In an action for fraudulent representations as to the value of shares of stock in a corporation, if there is evidence tending to show that the defendant made such false representations at a certain time for the purpose of inducing the plaintiff to buy some of the stock, it cannot be said, as matter of law, that such representations may not have continued to operate in the plaintiff's mind eleven months afterwards, and may not have induced him to accept more stock, even if he had become a director in the corporation and had acquired independent means of knowledge in the mean time, if in fact he continued to rely upon the defendant's statements in dealing with him.

In an action for fraudulent representations, if there is evidence tending to show that the defendant made false representations to the plaintiff as to the defendant's ownership of certain land in order to induce the plaintiff to advance money to the defendant, it cannot be said, as matter of law, that the representations were made good by a purchase of the land by the defendant before the plaintiff had acted upon the representations, if in the purchase the greater part of the price was secured by a mortgage on the land.

At the trial of an action for fraudulent representations as to the value of shares of stock in a corporation formed to promote the use in dentistry of a compound invented by the defendant, for which letters patent had been obtained, the plaintiff's evidence tended to show that the defendant's invention was merely a mixture of ingredients, all of which had been used long before in dentistry; and that the compound was worthless for the purpose for which it was intended to be used. The defendant asked the judge to instruct the jury that there was no evidence of a want of novelty in his invention; but the judge refused so to do. *Held*, that the defendant had no ground of exception.

In an action for fraudulent representations, alleged to have induced the plaintiff to take certain shares of stock and to borrow a sum of money, with a pledge of the stock as collateral security, which he paid to the defendant, the plaintiff's failure to prove that he pledged stock to secure the loan to him is not material, if he proves the defendant's fraud and his own advance of money on the faith of it.

If the declaration in an action contains counts in contract and counts in tort, and the plaintiff, by order of the judge, elects to proceed to trial on the counts in tort, the refusal of the judge to order the counts in contract stricken from the record is no ground for a new trial.

CONTRACT, with counts in tort.

The fourth and fifth counts, upon which alone the trial proceeded, were as follows:

Fourth count. "The plaintiff says that early in the year 1880 the defendant promoted, organized, and set up a bubble company, called the Dennett Dental Naboli Company; that said company was pretended to be organized under the laws of Connecticut, and was pretended by the defendant to have a capital of $1,000,000, fully paid up; that the defendant having offered to sell to the plaintiff six hundred shares of the capital stock of said corporation of the par value of $25 a share, did, with intent to deceive and defraud the plaintiff, falsely and fraudulently represent to him that the capital stock of said company was $1,000,000; that it was all paid in; that said stock was of the market value of $15 a share; that it was in great demand at that price; that all the treasury stock of said company could be sold at that time for $15 a share; that it had sold at that price until the company had funds enough on hand in its treasury, and it had now refused to sell any more at $15 a share, and had advanced the price to $20 a share; that he had paid all charges, calls, and assessments laid or to be laid upon said shares by said company or the directors thereof; that said company was in a sound financial condition, and that it had property which made the stock then worth $15 a share, and had made such business

contracts and engagements as would insure a rapid advance beyond said price; that the defendant was the 'president of said company, and knew that said company was solvent and responsible, with large business, and that it was a safe and profitable investment at $15 a share. And to further induce the plaintiff to purchase said stocks, the defendant offered and proposed to borrow from the plaintiff the sum of $3000 as a loan, and deliver to the plaintiff six hundred shares of said stock, as security for said loan, and gave the plaintiff the right to purchase said six hundred shares at $15 a share, or to return said stock to the defendant at the plaintiff's election; and the defendant agreed, if the plaintiff elected to return said stock, to repay the said $3000 and interest on the same, during the continuance of the loan, until the plaintiff should make his election.

"And the plaintiff says that, relying upon said representations of the defendant, and believing them to be true, on or about the first day of June, 1880, he loaned the defendant the sum of $3000, upon the terms so proposed by the defendant; but that the defendant wholly neglected to deliver the plaintiff the six hundred shares of said stock, or any shares, and that the plaintiff received none of said stock until October, 1880; that in truth, and as the defendant then well knew, all the representations made by the defendant to the plaintiff were false, and were made solely with intent to deceive and defraud the plaintiff, and to get possession of the plaintiff's money. And the said Dennett Dental Naboli Company was a bubble company, and organized fraudulently, without any capital whatever; that no capital was ever paid in; that it never had so much as $1000 in its treasury at any time; that its stock was worthless, and never had any market value, or any value whatever; that it never sold for $15 a share, unless by fraud. and deceit, and not at a fair sale in the open market; that it never had any business; that it was never upon a sound financial basis, but, on the contrary, the said company was then insolvent and the stock worthless; all of which the defendant then well knew.

"And the plaintiff says that in October, 1880, the defendant delivered him 1000 shares of said stock, instead of six hundred shares, as he had agreed, but wholly neglected and refused to give the plaintiff an agreement in writing, setting forth the terms

upon which the plaintiff held said stock, though often requested so to do. And plaintiff says that said stock was worthless, and no security; and that he was misled and defrauded by the defendant; that he has tendered back said 1000 shares of stock to the defendant, and demanded a return of his said $3000 and interest, but the defendant wholly neglects and refuses to return the same."

Fifth count. . " And the plaintiff says that about the twenty-fifth day of April, 1881, at Boston, the defendant having done all the acts, matters, and things mentioned in the fourth count, and made the representations therein set forth, and being then indebted to the plaintiff in the sum of $3000 and interest, obtained solely in consequence of said representations, took the plaintiff to a certain parcel of real estate in the Dorchester district, and then and there falsely represented to the plaintiff that he was the owner of said parcel of real estate; that he had made arrangements to dispose of part of it, at a large profit, which would enable him to repay the plaintiff said $3000 and interest; that a payment was due on said land in a few days which must be made before he could carry out the trade and get the money to repay the plaintiff; and then and there proposed to the plaintiff that the plaintiff should take 1000 shares of stock in said Dennett Dental Naboli Company, and raise $2000 for the defendant to make said payment, so the defendant could carry out the trade and repay the plaintiff.

" And the plaintiff says that, at the defendant's request, and relying on all said representations, he was thereby induced to take said 1000 shares of stock and borrow $1400 on four months' credit, with a pledge of said stock as collateral, which was all the money he could raise on said 1000 shares, and so notified the defendant. That the defendant received said $1400 from the plaintiff on or about May 2, 1881, and agreed to pay the notes at maturity, on which said sum was raised by the plaintiff for the defendant at the defendant's request; that the defendant failed to pay said notes at maturity, and the plaintiff was thereupon compelled to pay them, and did pay them, and redeemed said stock pledged as collateral; that he has tendered said stock to the defendant and demanded said $1400 and interest, but the defendant neglects and refuses to repay the same.

" And the plaintiff says that all the representations made by the defendant were false, and were known by the defendant to be false when they were made, and that they were made solely for the purpose of defrauding the plaintiff and getting possession of the plaintiff's money; that the Dennett Dental Naboli Company was a bubble company, gotten up by the defendant without any capital, credit, property, or business; that the defendant used the stock for his own purposes to raise money for himself; that none of the proceeds came to the company; that this expedition to the Dorchester district was part of a scheme to further defraud the plaintiff and get possession of more of his money, and not with any intention of repaying the previous indebtedness; and the defendant had not made any arrangement to dispose of any part of said land with intent to repay the plaintiff, but then designed and intended to cheat and defraud the plaintiff out of such sum as he might be able to raise by a pledge of said worthless stock, holding out to him the illusive hope that, by raising more money for the defendant, he would thereby enable the defendant to repay the indebtedness theretofore contracted."

After the former decision, reported 141 Mass. 207, the case was tried in the Superior Court, before *Dewey*, J. The jury returned a verdict for the defendant on the fourth count, and for the plaintiff on the fifth count in the sum of $1866; and each party alleged exceptions, which appear in the opinion.

*R. M. Morse, Jr.*, (*W. H. Towne* with him,) for the plaintiff.

*D. E. Ware & J. G. Thorp, Jr.*, for the defendant.

HOLMES, J. The plaintiff's evidence tended to show that the defendant's invention was merely a mixture of ingredients, all of which had been used long before to allay the pain caused by filling teeth. But it did not stop at that point; it tended to show that the compound was worthless for the purpose for which it was intended to be used; for the testimony was, that the ingredients separately were of no use, and that the mixture was as bad or worse. To meet this last proposition, the defendant put on a number of his patients, who testified that the defendant's operations upon their teeth, using his invention, were practically painless, whereas similar operations before had been very painful.

Plainly this was not testimony of a kind which the witnesses needed to be experts to give. The objections made to it are, that it introduces the trial of collateral issues, and that the fact may admit of being explained by other causes than the conclusion sought to be established. In some cases, at least, it would seem that the painful fillings were performed by other dentists, so that it might be argued that the evidence was only a testimony to the skilfulness of the defendant's hand. But no special objection of this sort was taken or argued, and, so far as the introduction of collateral issues goes, that objection is a purely practical one, a concession to the shortness of life. When the fact sought to be proved is very unlikely to have any other explanation than the fact in issue, and may be proved or disproved without unreasonably protracting the trial, there is no objection to going into it. If a dozen patients should testify that, when the defendant used his naboli, he filled their teeth without hurting them, and that he hurt them a good deal when he did not use it, supposing the testimony to be believed, and not to be explained by fancy and a general disposition on the part of the witnesses to think well of new nostrums, it would go far towards proving that naboli had some tendency to deaden pain. Indeed, the same thing is true in a less degree, if the painful operations were by another hand. Filling teeth, however skilfully done, is generally unpleasant. If it is found to be wholly painless when a certain compound is used, as the witnesses testified, probably the compound is at least in part the cause.

The evidence of Mrs. Thaxter as to the painlessness of Dr. Emerson's operations was admitted subject to the doctor's being called to prove that he used naboli. This was equivalent to a statement that it was not admissible unless the doctor was called. If the plaintiff had wished the evidence stricken out, or to have the jury instructed to disregard it, when the case was closed without calling the doctor, he should have asked for an instruction. The admission was proper at the time, and subject to the condition which was imposed.

It follows from what we have said, that the plaintiff's exceptions must be overruled.

At the present trial of this case, the plaintiff elected to proceed on the fourth and fifth counts. The main questions raised by the

defendant's exceptions, and argued by his counsel, are whether there was any evidence that the fraudulent representations specially alleged in the fourth count, and referred to in the fifth, helped to induce the plaintiff to enter into the transaction set forth in the fifth count, or so much of it as consisted in the acceptance of more stock; and whether there was any actionable representation concerning the real estate, as specially alleged in the fifth count. There is no question of pleading before us.

It is not denied that there was evidence tending to show that the defendant made false representations as to the stock, &c., in May, 1880, for the purpose of inducing the plaintiff to buy some of it. We cannot say, as matter of law, that such representations may not have continued to operate on the plaintiff's mind in April, 1881, and may not have induced him to accept more stock. We cannot say so, as matter of law, even if the plaintiff had become a director and had acquired independent means of knowledge in the mean time, if in fact he continued to rely upon the defendant's statements in dealing with him. Whatever may be the presumption, as between a director of a corporation and stockholders or others to whom he owes a duty, there is no such conclusive presumption that he knows the affairs of the company as will prevent his recovering against a person who in fact has defrauded him.

The plaintiff seems to have admitted that the alleged fraud as to the stock had no influence upon the transaction referred to in the fifth count. He put in evidence that he found out about the true condition of the company in July, 1880; and testified himself that he said, just before the transaction alleged took place, that the stock was not worth anything, that the defendant said naboli had failed them, and that he, the plaintiff, was induced to make the advances by his expectations as to the land which was the subject of the representations alleged in the fifth count. Coupling these facts with the verdict for the defendant on the fourth count, it is hard to believe that the alleged representations as to the stock had any practical weight or bearing upon the verdict for the plaintiff on the fifth count. We cannot say, however, that the plaintiff's admission appears, on the bill of exceptions, to have been so distinct as to have taken away his right to argue, if so minded, that the representations

of 1880 were an operating influence in 1881, or that the judge was wrong in telling the jury that it was for them to consider how far the evidence connected the representations in the fourth count with any effective influence. It does not appear that the plaintiff's counsel did in fact present any argument inconsistent with the plaintiff's testimony. Nor was any ruling asked on the ground that the plaintiff was concluded by his own testimony.

A more important question is raised by the evidence given in support of the allegations of the fifth count. This was to the effect that the defendant said that he wanted to show the plaintiff where his $3000 was coming from (referring to the sum mentioned in the fourth count); that he had got $25,000 in a certain tract of land which he showed the plaintiff; that the plaintiff asked if the defendant owned it, and the defendant said that he had bought it, and that there was where the plaintiff's $3000 were; that he had bought it for seven cents a foot, &c. The defendant admitted that he did not own the land at the time of this conversation with the plaintiff, although he gave a different account of what was said, so that, if the evidence had stopped there, the jury would have been warranted in finding that the defendant made false statements for the purpose of inducing the plaintiff to advance more money in the hope of getting back that which he had parted with before.

But the defendant further testified that he bought the land in question on April 26, 1881, and paid about $15,000 for it, about $6000 in money and the rest in a mortgage for $9000; and we understand that this date was not disputed, and that the purchase took place before the plaintiff made his advance on the faith of the defendant's statement.

The defendant argues that the plaintiff has suffered nothing, because the statement was made good before it was acted upon. We are not prepared to say that the fact that one party to a transaction, A., has been guilty of a material fraud, is purged of its effect if the representation is made good before it is acted upon by the other party, B. There would be much force in the argument that, if B. had known of A.'s fraud before the bargain was complete, he would not have been likely to complete it, whatever the existing state of facts. People generally break off their dealings with those whom they find trying to cheat them.

The fact that A. has tried to cheat B. is material, it may be said, because it offers what, according to common experience, would be a strong motive for not proceeding further. See *Bales* v. *Weddle*, 14 Ind. 349. A partial analogy may be found in the case of purchases of goods with the fraudulent intention not to pay for them; the buyer gives the seller all -the legal rights which he purports to give him, yet the seller may avoid the sale. *Dow* v. *Sanborn*, 3 Allen, 181. *Stewart* v. *Emerson*, 52 N. H. 301. It is true, however, that in that case the implied representation of an intent to pay for the goods without .putting the seller to his legal remedies is still false at the moment when the sale is made.

But, whatever the law may be in the extreme case supposed, we think that the representations must at least be made good in the most complete and indisputable way, before the defendant can escape on that ground. We cannot say, as matter of law, that they were made good by a purchase in which, by the defendant's own statement, the greater part of the price was secured by mortgage on the land. Considering the purpose of the whole conversation, which was to induce the plaintiff to advance more money, we cannot say that there was no evidence to warrant a finding that the defendant represented the land to be his own in such a sense as to secure the plaintiff a return of past and future advances, and that his subsequent purchase did not make that representation good.

The other exceptions may be disposed of in a few words. The defendant asked the judge to instruct the jury that there was no evidence of a want of novelty in his invention; but the judge refused so to do. The jury might have found that the defendant's so-called invention was only an empirical mixture of known sedatives; that it gained no new quality from the compounding, but even neutralized in some degree the qualities of the several ingredients. If they believed this, they might have found that to mix the ingredients was an expedient obvious to any person knowing their respective effects, and was not patentable. If the patent was worthless, the stock was worthless.

The plaintiff's failure to prove that he pledged stock to secure the loan to him which he procured as the first step towards advancing money to the defendant, was not material, if he proved

the substantive elements of his case, — the defendant's fraud, and his own advance on the faith of it. See *Cunningham* v. *Kimball*, 7 Mass. 65; *Packard* v. *Pratt*, 115 Mass. 405.

The court put the plaintiff to an election between the fourth and fifth counts and the other counts. Supposing that the defendant was entitled to require that the election when made should be final, which it would not be unless made to appear of record by striking out the other counts, *Dows* v. *Swett*, 127 Mass. 364, *Mullaly* v. *Austin*, 97 Mass. 30, the refusal of the court to order the other counts stricken out is no ground for a new trial. It did not affect the trial, it can be remedied now, and, in the event which has happened, it is immaterial to the defendant whether it is remedied or not.                    *Exceptions overruled.*