EDSON E. ROWLEY ET UX. *v.* GEORGE W. SHEPARDSON.

October Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed December 1, 1911.

*Fraud —Misrepresentations in Sale—Evidence—Damages—Opinion Evidence—Cross-Examination—Process—Validity—Misjoinder—Withdrawal of Count—Close Jail Execution.*

In an action for deceit inducing the purchase of a farm, based on the misrepresentations of the seller as to the number of sugar-maple trees thereon for use in making maple syrup, evidence that each of such trees was worth from fifty cents to seventy-five cents more for the purpose of making maple syrup than it was for timber was properly received as against the objection that such evidence was irrelevant, immaterial and not a proper element of damage.

The admission, subject to the objection that it called for a comparison, of a question to a witness as to the quality of maple sugar made from trees on a designated farm as compared with that made from trees in other localities was harmless where the answer was only, "It was a very fine quality."

In an action for deceit inducing the purchase of a farm, based on the misrepresentations of the seller that the farm had 1,000 or 1,200 sugar-maple trees, besides 500 that were reserved, but not specially designated, a question to a witness, as to the quality of the sugar made on the farm was not objectionable as including sugar made from the reserved trees.

In an action for deceit in inducing the purchase of a farm, based on the misrepresentations of the seller as to the number of sugar-maple trees thereon, no allegation of special damage was necessary for the admission of evidence as to the location and soil of the sugar-maple grove, and that it was favorably situated, because it pitched to the southeast.

In an action of deceit inducing the purchase of a farm, based on the misrepresentations of the seller as to the number of sugar-maple trees thereon for use in maksng maple syrup, where the evidence showed that the soil and location of a sugar-maple grove were material to the quality of its product, and that the grove in question was favorably situated, a merchant who in his business had purchased maple sugar and maple syrup, and who at various times had purchased the product of the grove in question, was properly allowed to testify that the sugar made from that grove had a higher market value than the ordinary product.

In an action for deceit inducing the purchase of a farm, based on the seller's misrepresentations as to the number of sugar-maple trees thereon, where a witness for defendant testified to his acquaintance with the farm, and gave his opinion of its value, he was properly cross-examined as to the value of maple trees considered as lumber and as available for sugar making.

Where a writ was issued against defendant's property, and served by attaching it, and nothing was done in the inception of the suit to present a jurisdictional question, the process was not void because the original declaration consisted of counts *ex contractu* and *ex delicto*, where the defect in the joinder was seasonably cured by striking out the counts *ex contractu*.

A close jail execution may be granted against defendant on a judgment against him in an action of deceit although the writ issued against his property was served by attaching it, and the attachment is still in force.

CASE for deceit in the sale of a farm. Plea, the general issue. Trial by jury at the September Term, 1910, Windham County, *Taylor*, J., presiding. Verdict and judgment for the

plaintiff. The defendant excepted. The opinion states the case. This case has been once before in the Supreme Court. See 83 Vt. 167.

*Cudworth & Pierce, Herbert G. Barber* and *Frank E. Barber* for the defendant.

*Chase & Daley* for the plaintiff.

MUNSON, J. The suit is for deceit in the sale of a farm. The deed contained a reservation of 500 sugar maples from the maple trees standing west of the highway running through the farm. The trees reserved were not otherwise designated or described in the deed, and were not marked. The reservation clause is given in full in the report of a former trial; 83 Vt. 167, 74 Atl. 1002, 138 Am. St. Rep. 1078. Subsequent to the conveyance to the plaintiffs, and before the bringing of this suit, all the reserved timber was conveyed, and 402 of the maple trees standing west of the highway were cut and removed by the purchaser. The plaintiffs claimed, and their evidence tended to show, that they negotiated for the farm with special reference to securing a sugar orchard of not less than 1,000 trees for use in the making of maple syrup; and that the defendant represented that there were from 1,600 to 1,700 sugar maples standing west of the highway more than one foot in diameter at the stump, and that they made the purchase and agreed to the reservation in reliance upon this statement.

The plaintiff was permitted to testify that these trees were worth from fifty to seventy-five cents per tree more for the purpose of making maple syrup than they were for lumber. This was objected to as irrelevant, immaterial, and not a proper element of damage. As against this objection, the evidence would have been admissible in connection with evidence of the value of the trees for lumber; and evidence of this character was offered by the plaintiffs, and excluded on defendant's objection.

A witness who testified that he was acquainted with the farm and familiar with real estate values in the vicinity, was permitted to give his judgment as to the value of the farm with from

230 to 300 sugar maples left standing on the west side of the high-way, and its value on the assumption that from 1,100 to 1,200 were left standing there. It is objected that the questions were improper because of their failure to include the fact that 500 of these trees were reserved to the defendant. But the questions took proper cognizance of this fact. They were framed with reference to the condition which would exist with all the reserved timber, including the 500 maples, taken off, and the condition that would have existed after this cutting if there had been the number of maples represented by the defendant.

This witness, after testifying that he had made maple sugar and syrup, and had seen the product of this farm, was asked what the quality of this product was as compared with the quality of sugar he had known of that came from other localities. The question was objected to as calling for a comparison; but no improper comparison was made, for the witness answered: "It was a very fine quality." It was also objected to as covering the sugar made from the 500 trees reserved to the defendant; but no error can be claimed in this respect, for the trees reserved were a part of the same orchard, and were not set apart by any designation. This sufficiently disposes of like objections made to testimony of the same character received from other witnesses.

The same witness was permitted to testify that the location and soil of a sugar orchard have to do with the quality of the product, and that the one on this farm was "situated extra good" for this purpose because it pitched to the south-east. Other witnesses were permitted to testify in general terms that the location was good. The only objection urged against this class of evidence is that there was no special allegation in the declaration to justify its admission. No special allegation was needed, for the evidence tended to show the extent of the general damage sustained by the plaintiffs.

A witness who stated that he was a merchant, and purchased maple sugar and syrup in the carrying on of his business, and had purchased the product of this farm at various times, was permitted to testify that the syrup made on this place had a higher market value than the ordinary product. This was objected to as irrelevant, immaterial and too speculative. It is now argued that the superior quality of this syrup may have

been due to the superior skill of the maker, and to the difference in the apparatus used. There being evidence tending to show that the soil and location of a sugar orchard are material factors in determining the quality of its product, the fact that the product commanded a superior price in the general market, if not otherwise accounted for, would be an important corroborative circumstance. If an inquiry as to the skill of the sugar makers were considered essential to the admissibility of this evidence, practical considerations would probably require its exclusion. If the inference of a superior location were to be drawn from a comparison of results with a single orchard, it would probably be necessary to accompany the evidence with proof that the appliances used were substantially alike. But when the evidence is of sales in the general market in the regular course of business, we think it may properly be assumed that the seller is in competition with others who have the usual improved appliances of the trade. Such a case does not call for an application of the rule which governs when the comparison is with a single instance selected by the party.

This view is somewhat supported by *Reeve* v. *Dennett*, 145 Mass. 23, 11 N. E. 938. There it was claimed that an article called "naboli" prevented the pain incident to filling teeth, and it was said of the evidence received in support of the claim: "The objections made to it are, that it introduces the trial of collateral issues, and that the fact may admit of being explained by other causes than the conclusion sought to be established. In some cases, at least, it would seem that the painless fillings were performed by other dentists, so that it might be argued that the evidence was only a testimony to the skillfulness of the defendant's hand. But * * * * when the fact sought to be proved is very unlikely to have any other explanation than the fact in issue, and may be proved or disproved without unreasonably protracting the trial, there is no objection to going into it."

A witness for the defendant testified to his acquaintance with the farm and gave his opinion as to its value. In cross-examination, he was asked to place a valuation on these trees, assuming them to be of different sizes, considered both as lumber and as available for sugar-making. This line of inquiry was

calculated to test the correctness of his valuation of the farm, and was allowable cross-examination.

At the close of all the evidence, and also after verdict, the defendant moved that the suit be dismissed on the ground that the process was void, in that the original declaration contained counts both *ex contractu* and *ex delicto*. *Roy* v. *Phelps*, 83 Vt. 174, 75 Atl. 13, is relied upon in support of this contention. In that case the writ issued as a *capias*, and was served by arresting the defendant's body. In this case the writ issued against, and was served by attaching the property of the defendant. Nothing was done in the inception of this suit to present a jurisdictional question, and the defect in the joinder could be and was seasonably cured by striking out the counts *ex contractu*. See *Downing* v. *Burnham*, 84 Vt. 149, 78 Atl. 789.

The defendant excepted to the allowance of a close jail certificate, and now urges that a certificate cannot lawfully be granted while property is held under attachment. It was held otherwise in *Parker* v. *Parker*, 71 Vt. 387, 45 Atl. 756.

*Judgment affirmed.*