## CHESTERFIELD MFG. CO. v. LEOTA COTTON MILLS.

### (Circuit Court of Appeals, Fourth Circuit. February 20, 1912.)

### No. 1,061.

1. APPEAL AND ERROR (§ 1058*)—HARMLESS ERROR—ERRONEOUS EXCLUSION OF EVIDENCE.

   The error, if any, in rejecting the testimony of a witness when offered in chief, is immaterial, where the witness is allowed to give the testimony in rebuttal.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4200–4204, 4206; Dec. Dig. § 1058.*]

2. EVIDENCE (§ 99*)—COLLATERAL FACTS—ADMISSIBILITY.

   Whether evidence of collateral facts relevant to the issue shall be admitted is largely, if not altogether, within the sound judicial discretion of the trial judge.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 123, 137–143; Dec. Dig. § 99.*].

3. EVIDENCE (§ 114*)—COLLATERAL FACTS—ADMISSIBILITY.

   Where the issues were whether lots of cotton dyed by defendant for plaintiff had been dyed fast to scouring, or, if not, whether the fault was in the cotton supplied by plaintiff or in the dyeing, and samples of the cotton which plaintiff claimed was the material dyed were in defendant's possession, and there was no question but that defendant could dye properly, evidence that defendant had, during the period, dyed cotton fast to scouring for third persons was irrelevant, in the absence of proof that plaintiff's cotton was put in the same bath with the cotton of the third person.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 125–132; Dec. Dig. § 114.*]

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Greensboro.

Action by the Chesterfield Manufacturing Company against the Leota Cotton Mills. There was a judgment for defendant, and plaintiff brings error. Reversed.

David Stern (Stern & Stern and Rouse & Land, on the brief), for plaintiff in error.

E. S. Parker, Jr., and William P. Bynum (Parker & Parker, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and DAYTON and ROSE, District Judges.

ROSE, District Judge. The plaintiff in error was the plaintiff below.. It will be called the plaintiff. The defendant in error will be referred to as the defendant. In August, 1906, the defendant began to dye cotton for the plaintiff. By their agreement, it was to be dyed sulphur black. The color was to be fast to scouring and cross-dyeing. For more than a year defendant's work was satisfactory. Plaintiff says, however, that the cotton dyed about the end of the year 1907 or the beginning of 1908 was not fast to scouring. Hence this suit.

To prove its case, the plaintiff examined practical men, who had seen the cotton complained of scoured in the ordinary course of manufacture, and theoretical experts, who had scoured it in their laboratories. Both classes said that it had not been dyed fast to scouring. Defendant put on the stand witnesses to say that they had examined and tested the cotton in controversy, and that its color was in the commercial sense fast to scouring. The defendant also offered testimony tending to prove that the trouble was due to the poor quality of the cotton sent by the plaintiff to be dyed, and not to any lack of care or skill in the dyeing. Had the evidence stopped at this point, there would have been nothing to call for our consideration. Defendant, however, went further. It put on the stand three managers of as many different cotton mills other than that of the plaintiff. It offered to prove by them that in the years 1906, 1907, and 1908 the defendant had dyed cotton for them. Two of them said that the cotton had been dyed sulphur black and was fast to scouring. The other said that by his direction his cotton had been dyed sulphur blue. He had heard no complaint about it from any of his customers. He assumed in consequence that the color had been fast to scouring. All this evidence was admitted over the objection of the plaintiff.

[1] The sole question before us is: "Did its admission constitute prejudicial error?" It is true that the plaintiff says that the court erred in rejecting some testimony of one of its experts. It is immaterial whether it did or not. The witness was in rebuttal allowed to give the evidence which had been excluded when he was under examination in chief.

[2] It is not easy to lay down any hard and fast rule as to when evidence as to what are sometimes rather loosely called collateral facts is admissible and when it is not. If these facts are relevant to the issue, it has been well said that the shortness of life is the only real reason why they should not be proved. Reeve v. Dennett, 145 Mass. 28, 11 N. E. 938. Whether evidence of such facts shall be admitted depends largely, if not altogether, upon the sound judicial discretion of the trial judge. Bemis v. Temple, 162 Mass. 342, 38 N. E. 970, 26 L. R. A. 254; 1 Chamberlain's Modern Law of Evidence, § 59.

[3] If the matters to which the three mill managers testified were in fact relevant to the issue between the parties, the admission of their evidence did not constitute reversible error. What was the issue? It was whether certain lots of cotton dyed by the defendant for the plaintiff had been dyed fast to scouring, or, if not, whether the fault was in the cotton or in the dyeing. There was no question that defendant could dye properly. It was admitted that for more than a year it had dyed plaintiff's cotton fast to scouring. The evidence under consideration was not offered to show the ability of the defendant to do what it had undertaken to do. If that had been an issue in the case, such evidence might well have been relevant. Reeve v. Dennett, supra.

Had it been proved, first, (a) that the plaintiff's cotton in controversy and that of the other three mills had been dyed in the same

baths, or (b) even that they had been in process of dyeing during the same period, that is to say, if it had been shown that part of plaintiff's cotton in dispute had been dyed first, then some cotton from one or more of the other mills, then some more of plaintiff's cotton, then some of that of the other mills, and so on, and, second, there had been evidence that the plaintiff had supplied a different, and for the purposes an inferior, cotton to that furnished by the other mills, we should hesitate to say that there had been error in admitting the testimony now complained of. Bradford v. Boylston Fire & Marine Ins. Co., 11 Pick. (Mass.) 162.

The record shows, however, that none of the plaintiff's cotton was ever put in the same bath with the cotton of anybody else. There is no clear evidence that at any time during the period in which the cotton in controversy was dyed for the plaintiff any cotton was dyed for any of the three mills. Unless that fact was affirmatively shown, we do not think that the matters testified to by the witnesses in question are relevant to the controversy. It is true that the defendant has offered evidence to show that during the three years 1906, 1907, and 1908, its methods of dyeing were uniform. It asks why, under such circumstances, the testimony in dispute is not admissible under the rule laid down in Ames v. Quimby, 106 U. S. 347, 1 Sup. Ct. 116, 27 L. Ed. 100.

If the jury believed that, during the entire three-year period, every lot of cotton had been dyed by defendant substantially like every other lot, the controverted testimony was superfluous. It was admitted that, during more than a year of that time, plaintiff's cotton had been well dyed. If that was true, and the jury believed that the dyeing had been done in the same way during the latter part of 1907 and the earlier part of 1908 as in the latter months of 1906 and earlier portion of 1907, there was an end of the case. The verdict would necessarily have been for the defendant. If they did not believe that every dye bath during that time had been in all material respects like every other dye bath, and that every other step of the dyeing process had at all times been carried on in substantially the same way, the evidence excepted to should not have been considered by them. It follows that it could not have aided them to find the solution of the problem before them. It might readily have confused them in seeking the answer.

From another standpoint there was no occasion for this evidence. The record shows that samples of the very cotton which plaintiff said was improperly dyed were in defendant's possession. It may sometimes happen that a party may, without fault of his own, in a case like this, be unable to subject the thing in dispute to the examination of his own experts, theoretical or practical. In such cases courts may be reluctant to say to him that he may not offer any evidence, because he cannot offer the best. We have no such case before us.

Was the cotton, samples of which were in possession of both parties, and some of which had been shown to the jury, dyed fast to scouring? was the question to be answered. The evidence to which the plaintiff objected was substantially of the same kind as that which

the Supreme Court, in the case of Albany & Rensselaer Company v. Lundberg, 121 U. S. 451, 7 Sup. Ct. 958, 30 L. Ed. 982, held to be inadmissible. The rule is not a new one. It was applied more than a century ago. Holcombe sold Hewson beer. Hewson did not pay for it. Holcombe sued for the price. Hewson said the beer was bad. Holcombe offered to prove that he sold good beer to other people. Lord Ellenborough said that he could not do it. He might deal well with one, and not with the others. "Let him call some of those who frequented the defendant's house and drank the beer which he sent in, or let him give any other evidence of the quality of this beer." Holcombe v. Hewson, 2 Campbell, 391.

Reversed.