See also, D.C., 76 F.R.D. 214.

**SCM CORPORATION**

v.

**XEROX CORPORATION.**

Civ. No. 15807.

United States District Court, D. Connecticut.

Oct. 11, 1977.

Stephen Rackow Kaye, New York City, for plaintiff.

Stanley D. Robinson, New York City, for defendant.

## RULING ON TRIAL SCHEDULE

NEWMAN, District Judge.

The trial of this protracted private anti-trust case has now reached a point where court action must be taken to keep the litigation within manageable bounds. Understanding the need for such action and determining the appropriate steps to be taken require brief review of the course of the litigation to date.

The suit was filed in 1973. Venue in the District of Connecticut was selected by the plaintiff SCM.[1]

At an early stage of this litigation, on defendant's motion to dismiss the complaint as prolix, counsel for plaintiff assured the Court that "the allegations when plead to are going to show that there is very little left by way of factual dispute." (Tr. 31, Sept. 21, 1973). Xerox's motion was granted, and a somewhat abbreviated complaint was filed. In 1975 plaintiff elected to expand the issues in the case by filing an amended complaint.

During the extensive pre-trial stage of this litigation, the Court imposed upon the parties heavy burdens in an effort to have the factual disputes narrowed and clearly identified. Both parties were obliged to make detailed submissions of every fact each intended to prove at trial annotated to the evidence to be presented, and the opposing side was obliged to admit or deny the truth of each factual allegation and, when a fact concerning the conduct of the opposing party was denied, that party was obliged to submit its version of what occurred. That task produced some 30,000 factual allegations; the parties have estimated that approximately two-thirds of these have been admitted in whole or in part.

By Pre-Trial Order No. 24, dated May 6, 1976, a trial date was set for June 6, 1977. The date was subsequently postponed only to June 20, 1977, and trial began on that date. Prior to jury selection the Court asked counsel for their best estimates of the trial's duration so that prospective jurors could be fairly advised. Counsel for both sides, indicating that they expected their respective cases to take approximately equal time, stated that the range of their estimates for the trial was six to eight months. Relying on that estimate, the venire summoned for jury selection was told that while the trial would be far longer than the usual trial, eight months was the expected outer limit. Understandably many members of the venire asked to be excused from service of such length and all such requests were granted; in due course,

1. In fairness to the plaintiff, it should be pointed out that the choice of forum was largely shaped by prior events. A somewhat similar suit against Xerox by Litton Industries, Inc. had been filed in this District in 1972, and a related suit by Xerox against two Litton subsidiaries, filed in the Southern District of New York, had been transferred to this District. Thus, SCM might have anticipated in 1973 that filing this suit elsewhere could have resulted in a transfer to this District, where the Litton-Xerox litigation was then still pending.

however, a final panel[2] was selected, each of whom was apparently willing to accept service in a trial estimated to last not more than eight months.[3]

After jury selection, preliminary jury charge, and opening statements, the presentation of evidence began on June 27, 1977 and has continued on a full-time schedule except for the week of September 5. Since the evidence began on June 27, the 14-week period available for trial (not including the week of September 5), which ended October 7, has included at least as many actual trial hours as counsel could fairly have expected when trial estimates were given, and in all likelihood considerably more.[4] Thus to date 14 trial weeks have been consumed by the plaintiff out of a top of the range estimate of four months or 17 weeks. The high rate of usable trial hours in the first 14 weeks is emphasized by the fact that the trial transcript now totals 12,322 pages.

Consideration must now be given to the use of the time that has ensued. Counsel for the plaintiff initially advised the Court that the first phase of plaintiff's case would consist largely of documentary evidence and depositions, with most of the witnesses to be presented later in the trial. The presentation of documents was estimated to take four or five weeks. In fact, except for brief appearances by minor witnesses, the presentation of documents, including brief deposition extracts, continued for 8 weeks until a principal witness, Leslie Overlock, was called, and documents resumed thereafter. In the first 14 weeks, only two principal witnesses have been called. While the documents have included much highly probative material, counsel have not been content to introduce only such material, but have introduced additional portions that contribute little if any significant new information.

In an effort to stem the flood of paper, the Court some weeks ago undertook the task of reviewing each night the documents scheduled for presentation the following day and suggesting to counsel those documents or portions that seemed cumulative or not sufficiently probative to justify the added time to present them. Fed.R. Evid. 403. That process resulted in the exclusion of some documents.[5] However, the process is not a realistic way to resolve the problem presented. In the first place, it is the task of counsel, not the Court, to

2. Final panel in this District means the number of jurors to be impaneled plus the total number of peremptory challenges allowed. Peremptories are exercised against this final panel.

3. By agreement of counsel a jury of 14 was selected, with the understanding that none would be designated as an alternate, all would deliberate on the verdict, and those encountering illness or other unforeseen grounds for excuse would be excused with the trial continuing so long as at least six jurors were available for deliberation.

4. Trial has continued on a five-day-a-week schedule with the jury summoned for 10 a. m. and excused at 5 p. m. Court sessions with counsel prior to 10 a. m. and after 5 p. m. to consider objections to evidence and other disputes have enabled the jury to be present in the courtroom for the receipt of evidence during the normal court day to an extent far greater than occurs in most trials. Remarkably, only one trial day has been lost through illness of a juror. On extremely rare occasions a brief portion of a trial day was lost to accommodate a juror's scheduled medical appointments. With the exception of one brief probation revocation proceeding, no court hours between 10 and 5 have been diverted to other litigation. Two totally unexpected days were lost in the week of September 5. Since that week included Labor Day and the two-day required absence of the Court due to the statutorily mandated Judicial Conference, 28 U.S.C. § 333, the Court excused the jury for the entire week, since only two trial days remained and since they had well earned a brief respite.

5. It should not be assumed that each document introduced after the Court's review was either fully admissible under Rule 403 or, even if admissible, realistically useful in view of the quantity of documents that preceded it and are to follow it. The Court review endeavored to identify documents that were obviously repetitious. Many others might well have been ruled inadmissible had defendant interposed an objection. Moreover, the Court's *sua sponte* suggestion that a document was not needed had to be made without consideration of all of the documents that followed it, a few of which may have been more probative than earlier documents. This only underscores the need for counsel, familiar with all his evidence, to make the appropriate selections.

make the selection of materials most appropriate for introduction into evidence. Secondly, a trial judge cannot accept the burden of reading hundreds of pages of materials each night without total abdication of responsibility for the other pending cases that require attention.

Throughout the trial the Court has repeatedly brought to the attention of plaintiff's counsel a concern that the pace of the trial seemed unlikely to comport with the original estimates. Repeated requests for a witness list were made and not promptly complied with. Though the identity of all potential trial witnesses was known from the pre-trial submissions of proposed facts annotated to evidence, it remained unclear how many of the eligible witnesses counsel thought were really necessary. Moreover, the Court has repeatedly cautioned counsel not to schedule evidence in a progression that saved the best for last, to avoid the risk that a curtailment of evidence would preclude more significant proof than that introduced at an earlier stage. Some leeway in such matters must of course be given since some evidence is best presented in chronological order. By now, however, there has been extensive evidence detailing the history to the present time of both the defendant and the plaintiff corporations. Thus there is no risk that curtailment of evidence now will interrupt a chronological presentation.

Finally, on October 5, plaintiff's counsel informed the Court of his current estimate of the time required to present the balance of the evidence he intended to offer. That estimate includes 15 days for direct testimony by more than 30 witnesses on the issue of liability, 15 days for reading depositions, 11 days for reading documents, and 10 days for direct examination of witnesses on the issue of damages. The Court has previously advised counsel that any estimate of live testimony must take into account time for cross-examination approximately equivalent to direct testimony. Thus, if the direct testimony time of live witnesses is doubled to allow for cross-examination, and the deposition time is expanded by only one-fifth to allow for completeness, plaintiff's October 5 estimate would, even if met, entail 79 additional trial days, with plaintiff's case concluding at the end of January after seven months, compared to an initial estimate of four months. When this October 5 estimate was received, the Court cautioned counsel that some more rigorous action would have to be taken to keep the trial within manageable limits and urged a reconsideration of the amount of material to be introduced and the presentation of a less ambitious schedule. No revised schedule has been presented. Moreover, the presentation of documentary evidence during the two trial days following the October 5 estimate despite the Court's firm caution indicates that this caution has not been heeded. The documents in these two days consumed extensive time to present a relatively brief number of facts that could have been presented in far shorter time. In short, self-restraint by counsel has been demonstrated to be unavailing.

■■■ The Court concludes that it has an obligation to the proper administration of justice in this District to take appropriate action to curtail the length of this trial. Both the Federal Rules of Civil Procedure and the Federal Rules of Evidence make clear that time is a relevant consideration in the conduct of litigation. Fed.R.Civ.P. 1 states that the civil rules are to be construed to secure the "just, *speedy,* and inexpensive determination of every action." (emphasis added). Fed.R.Evid. 403 provides that evidence, although relevant, may be excluded if its probative value is substantially outweighed by several factors, among which are "undue delay" and "waste of time." That rule normally contemplates that the time-consuming nature of evidence will be determined as to each particular item of evidence offered. However, in a protracted case such as this, the purpose of the rule can best be achieved by considering time in the aggregate and leaving to counsel the initial responsibility for making individualized selections as to the relative degree of probative value from the mass of evidence available.

As Judge Wyzanski observed, confronted with a similar problem, "It is the function of counsel to aid the Court by selecting from the mass of evidence made available through the almost unlimited pre-trial discovery sanctioned in this case such portions as the Court can study within a reasonable time." *United States v. United Shoe Machinery Corp.*, 93 F.Supp. 190, 191 (D.Mass. 1950). The commentators agree. "The Court may also be forced to exclude where the evidence is not so much cumulative as overwhelming in quantity." Weinstein's Evidence ¶ 403[06]. "It has never been supposed that a party has an absolute right to force upon an unwilling tribunal an unending and superfluous mass of testimony limited only by his own judgment and whim. . . . The rule should merely declare the trial court empowered to enforce a limit when in its discretion the situation justifies this . . . ." 6 Wigmore, Evidence § 1907 (Chadbourn rev. 1976). See also Manual for Complex Litigation § 4.57. Such a rule, Holmes observed, is merely "a concession to the shortness of life." *Reeve v. Dennett*, 145 Mass. 23, 28, 11 N.E. 938, 944 (1887). As this Court earlier observed in this litigation, "An antitrust suit remains a piece of litigation; it is not a life's work." Pre-Trial Ruling No. 15 at 4.

Plaintiff's counsel has earnestly urged that his most recent time estimate should be fully allowed when the expected duration of this trial is compared to other antitrust trials of greater length. Reference is made to government suits that have taken in excess of one year. Moreover, counsel points out that while the government is obliged to prove only the elements of an antitrust violation, the private litigant must prove, in addition, facts to establish that the violation had an impact on the plaintiff and facts to establish the amount of damages suffered.

The court is not persuaded that the time consumed by government-initiated antitrust trials should be accepted as a benchmark. One may well wonder whether all the days of such trials can be fully justified. But, in any event, those suits are brought for the sole reason of vindicating an alleged injury or threat to the public interest. While private antitrust plaintiffs also advance similar interests in some instances as private attorneys general, see *Zenith Corp. v. Hazeltine*, 395 U.S. 100, 131–32, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), the principal reason a major damage suit such as this is brought is to secure a private benefit for a private litigant. Moreover the context in which this litigation arises includes an action brought against the defendant by the Federal Trade Commission, which has been concluded by a consent decree affording substantial prospective relief. Plaintiff insists the FTC, hampered by limited resources, accepted a consent decree on terms less favorable than it would have been entitled to after full litigation. But the fact remains that a major agency of the United States, charged with important responsibilities in the enforcement of the antitrust laws, concluded that the consent decree was an appropriate vindication of the public interest. Thus there can be no doubt that the dominant purpose of the plaintiff in pursuing this litigation at this time is to determine whether it should receive a sum of money from the defendant and if so, in what amount. While that is an entirely legitimate objective it is entitled to pursue under the antitrust laws, the essentially private nature of reaching that objective must be weighed by a court in determining to what extent the public functions of a public tribunal should be diverted by continued litigation of this case. "The Court has obligations to other parties who have cases to be heard." *United States v. United Shoe Machinery Corp., supra*, 93 F.Supp. at 191. This District, which plaintiff selected, has only three judges in regular active service for a caseload that has been growing faster than any district in the Second Circuit.

A further consideration to limit the duration of the trial concerns the jury. In the first place, the jurors when impaneled, were given an estimate as to the length of the time they would be obliged to serve. Service during a trial lasting several months is an extraordinary imposition upon men and

women involuntarily summoned for jury duty. Those who did not seek excuse from service on this case are entitled to have their service kept to a period not too far in excess of the range of estimated time they were told to expect. This expectation was given them before they were selected, and reconfirmed on September 2, when, after 10 weeks of evidence, they were told that the top of the estimated range for the trial's length, or eight months, was what they should expect (Tr. 8988). Plaintiff's counsel gave no indication then of a need for more time.

Secondly, there are limits to the amount of factual material any trier, whether judge or jury, can realistically be expected to absorb and assess. This Court has endeavored to promote juror comprehension of the case by encouraging the jurors to take notes and providing notebooks for this purpose. Many of them are doing so, some extensively. But no matter how conscientiously they approach their task, a profusion of data threatens to impede their orderly and fair decision-making. The evidence is so extensive that the lawyers have found it helpful to supplement their ability to recall it by the aid of computers, in which the entire transcript is stored for easy and selective retrieval. If the task of recall poses such problems for the attorneys who have lived with the case for years, the jury is entitled to have its task kept within manageable proportions.

■ The Court has concluded that an absolute limit on the number of trial days available to the plaintiff to conclude presentation of its case is the appropriate remedy, in light of the progress of this case to date. Determination of that limit will be made upon all of the circumstances, including the estimates originally given, the estimates of additional time now claimed to be

needed, the nature of the evidence presented to date, the excessive extent of detail with which such evidence has been presented, the absence of any significantly new topics yet to be presented, and the unlikelihood that any effort short of an overall time limit will prove to be effective. Under all the circumstances, six months is allowed for the plaintiff's case. That is 50% more than the top range of counsel's estimate and ample time in this Court's judgment. Since evidence began in the last week of June and was interrupted for one week of September, the six months will conclude on December 30, 1977. Plaintiff has estimated that its damage case will require 10 days of witness testimony. Since equal time should be anticipated for cross-examination, and the equivalent of one trial day should be allowed for unanticipated delays, the damage case can be expected to take up the 21 trial days available in the month of December. Therefore to meet a six months' limit on plaintiff's entire case, the presentation of plaintiff's liability case must be concluded by November 30, 1977. That provides 35 trial days including today, October 10.[6] Since unanticipated delays may consume the equivalent of one trial day, plaintiff will have to present the balance of its evidence on liability within the next 34 trial days.[7] Cross-examination of any of plaintiff's witnesses, as to either liability or damages, will be expected to consume no more time than direct examination; if for cause shown, it is necessary to allow the defendant additional time for cross-examination, such additional time will not be charged to plaintiff's allowable time. If the imposition of the November 30 deadline for concluding liability evidence and the December 30 deadline for concluding damage evidence creates a hardship not presently foreseeable, consideration will be given to permitting plaintiff to add brief additional evi-

---

6. Court will not be in session October 24 (Veterans Day) or November 24 and 25 (Thanksgiving).

7. These 34 available trial days to complete the liability case compare to counsel's estimate of 59 trial days, made on October 5, which becomes an estimate of 56 trial days needed as of

today. Thus, counsel is being denied 22 requested trial days in order to keep the entire plaintiff's case within the six-months' limit. This should be compared to a total of 97 actual trial days for plaintiff's liability case, the 63 trial days used thus far plus the 34 available trial days between now and November 30.

dence in rebuttal to the defendant's case. It is inconceivable that despite the Court's repeated warnings not to save the best evidence for last, the plaintiff has not by now, after 14 weeks of evidence, presented evidence it believes sufficient to establish a *prima facie* case of liability. In any event, seven and one-half weeks remain for plaintiff to make its liability case not only *prima facie* sufficient but also persuasive. IT IS SO ORDERED.

Dated at Hartford, Connecticut, this 10th day of October, 1977.[8]

---

**8.** Though filed October 11, this Ruling is dated October 10; all time computations are made as of October 10, and on that date the provisions of this Ruling were disclosed to counsel, on the record (Tr. 12,328).