MCI COMMUNICATIONS CORPORATION et al., Plaintiffs,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY et al., Defendants.

No. 74 C 633.

United States District Court, N. D. Illinois, E. D.

Nov. 28, 1979.

---

Robert Hanley of Jenner & Block, Chicago, Ill., for plaintiffs.

George L. Saunders, Jr., of Sidley & Austin, Chicago, Ill., for defendants.

## PRETRIAL ORDER

GRADY, District Judge.

We are about to start trial in this complex antitrust case.[1] The defendants have, whenever the occasion arose, informed me that the case will take 18 months to try. That prediction, even though consistently disputed by the plaintiff, has caused me to anticipate trial with restrained enthusiasm.[2] I presently have 400 civil cases on my calendar. New cases are added at the rate of about 30 per month. Experience teaches that civil cases are disposed of in one of three ways: (1) they are settled in advance of trial, without the pressure of a trial date; (2) they are settled on the brink of trial in response to the immediate prospect of trial; (3) they are disposed of by trial. By far the largest percentage of cases is in the second category—cases that settle because and not until the moment of truth is at hand. By

my estimate, this represents 60 to 70 per cent of the total. The practical significance of this in an individual calendar system is that when a judge is engaged in a long trial the majority of his cases simply stagnate. Without pressure, nothing happens. The steady accretion of newly filed cases results in a growing backlog.

There is no doubt that if I were to try this case for 18 months, or even 6 months, the repercussions on the remainder of my calendar would be serious and longlasting. On the other hand, this case is now almost 6 years old. Unless we are to consign it forever to limbo, we must do something with it.

I determined that the way to start is to obtain more precise time estimate. I asked the parties several weeks ago to file lists of witnesses, setting forth the name of each witness, a brief description of his proposed testimony, the estimated length of direct examination and estimated length of cross examination. Plaintiff filed a 3-page list, naming 17 witnesses and stating that it expects its case-in-chief to take approximately 26 trial days. Of this time, plaintiff estimates defendants'. cross-examination will consume approximately 15 trial days.

Defendants filed a 33-page list, naming 162 witnesses and describing a minimum of an additional 21 by category, for a total of at least 183 witnesses. Defendants estimate that their cross-examination of plaintiff's witnesses will take from 21 to 46 trial days. Defendants' overall estimate of the length of the trial is in excess of 8 months.

1. The nature of the case is described in our earlier opinion denying defendants motion to dismiss. *MCI Communications Corp. v. Am. Tel. & Tel. Co.*, 462 F.Supp. 1072 (N.D.Ill.1978).

2. I have experienced what a long trial can do to a judge's calendar. In 1977, I tried a 4½ month civil bench trial, *People of State of Ill. v. City of Milwaukee*, 599 F.2d 151 (7th Cir. 1979), and a 2½ month criminal jury trial, *United States v. McPartlin*, 595 F.2d 1321 (7th Cir. 1979). This 7 month concentration on two cases created a backlog on the civil side of my calendar which, two years later, I am just beginning to work through. On the criminal side, the backlog of cases became critical in view of the time re-

quirements of the Speedy Trial Act. This required a long term concentration on criminal trials in order to meet the July 1, 1979, deadline of the Act.

In some districts, a judge who undertakes a long trial is given relief by his colleagues, so that serious calendar problems are avoided. In this district, however, there is no rule or practice affording such relief. We have a strict individual calendar system. It is not my purpose to comment here on the wisdom of such a policy, but a knowledge of its existence is essential to an understanding of why a case of this sort poses such serious problems to the administration of justice.

These lists have been valuable to me in appraising the realities of the case. Plaintiff's list seems to contemplate an efficient presentation of its evidence. I perceive no duplication and no excess in its description of the proposed subject matter of the testimony. Defendants' list is equally helpful, although in a somewhat different sense. First, when required to think in specific terms, defendants found that instead of 18 months the case will take only 8 months. Secondly, a reading of defendants' list and the proposed subject matter of its testimony persuades me that defendants have been thinking more in terms of a theatrical production than the trial of a lawsuit. It is almost an understatement to say that defendants' approach to the case is grandiose. Without intending to pass upon any evidence questions at this time, and recognizing that I asked the parties to be very brief in describing the proposed subject matter of the testimony, it does appear to me that much of defendants' proposed testimony would be cumulative and that some of it would be irrelevant. Suffice it to say that I do not accept defendants' list as a realistic estimate of the time that will reasonably be required for a full and effective defense of this case.

The question that arises is whether I have authority to impose reasonable time limits upon the conduct of the trial. I have found the answer in the excellent opinion of Judge Jon O. Newman in *SCM Corp. v. Xerox Corp.*, 77 F.R.D. 10 (D.Conn.1977).[3] In that case, the plaintiff had made little headway after 14 weeks of trial and was far behind its pretrial estimate of the length of time its case would take. It appeared that plaintiff's case, originally estimated to take 4 months, would take 7 months. Judge Newman's reaction to this situation is worth quoting at length:

*The Court concludes that it has an obligation to the proper administration of justice in this District to take appropriate action to curtail the length of this trial.* Both the Federal Rules of Civil Procedure and the Federal Rules of Evidence make clear that time is a relevant consideration in the conduct of litigation. Fed.R.Civ.P. 1 states that the civil rules are to be construed to secure the "just, *speedy,* and inexpensive determination of every action." (emphasis added). Fed.R.Evid. 403 provides that evidence, although relevant, may be excluded if its probative value is substantially outweighed by several factors, among which are "undue delay" and "waste of time." That rule normally contemplates that the time-consuming nature of evidence will be determined as to each particular item of evidence offered. *However, in a protracted case such as this, the purpose of the rule can best be achieved by considering time in the aggregate and leaving to counsel the initial responsibility for making individualized selections as to the relative degree of probative value from the mass of evidence available.*

As Judge Wyzanski observed, confronted with a similar problem, "It is the function of counsel to aid the Court by selecting from the mass of evidence made available through the almost unlimited pre-trial discovery sanctioned in this case such portions as the Court can study within a reasonable time." *United States v. United Shoe Machinery Corp.*, 93 F.Supp. 190, 191 (D.Mass.1950). The commentators agree. "The Court may also be forced to exclude where the evidence is not so much cumulative as overwhelming in quantity." Weinstein's Evidence ¶ 403[6]. "It has never been supposed that a party has an absolute right to force upon an unwilling tribunal and unending and superfluous mass of testimony limited only by his own judgment and whim. . . . The rule should merely declare the trial court empowered to enforce a limit when in its discretion the situation justifies this . . . ." 6 Wigmore, Evidence § 1907 (Chadbourn rev. 1976). See also Manual for Complex Litigation § 4.57. Such a rule, Holmes observed, is merely "a concession to the shortness of life." *Reeve v. Dennett*, 145

---

3. Judge Newman is now a judge of the Court of Appeals for the Second Circuit.

Mass. 23, 28, 11 N.E. 938, 944 (1887). As this Court earlier observed in this litigation, "An antitrust suit remains a piece of litigation; it is not a life's work." Pre-Trial Ruling No. 15 at 4.

77 F.R.D. at 13–14. (Emphasis added).

Judge Newman commented upon the unfairness of allowing the litigants in one case to impose unduly upon scarce judicial resources:

> . . . [T]he principal reason a major damage suit such as this is brought is to secure a private benefit for a private litigant. . . . [T]here can be no doubt that the dominant purpose of the plaintiff in pursuing this litigation at this time is to determine whether it should receive a sum of money from the defendant and if so, in what amount. While that is an entirely legitimate objective it is entitled to pursue under the antitrust laws, the essentially private nature of reaching that objective must be weighed by a court in determining to what extend the public functions of a public tribunal should be diverted by continued litigation of this case. "The Court has obligations to other parties who have cases to be heard." *United States v. United Shoe Machinery Corp., supra,* 93 F.Supp. at 191.

77 F.R.D. at 14.

Judge Newman also commented upon the hardship a long trial means for the jurors. He went on to point out that, in addition to the hardship, there is a serious question as to whether the trier of fact (whether judge or jury) can understand the mass of evidence presented in a trial lasting many months:

> . . . [T]here are limits to the amount of factual material any trier, whether judge or jury, can realistically be expected to absorb and assess. This Court has endeavored to promote juror comprehension of the case by encouraging the jurors to take notes and providing notebooks for this purpose. Many of them are doing so, some extensively. But no matter how conscientiously they approach their task, a profusion of data

threatens to impede their orderly and fair decision-making. The evidence is so extensive that the lawyers have found it helpful to supplement their ability to recall it by the aid of computers, in which the entire transcript is stored for easy and selective retrieval. If the task of recall poses such problems for the attorneys who have lived with the case for years, the jury is entitled to have its task kept within manageable proportions.

77 F.R.D. at 15.

In the instant case, counsel have ordered the transcript prepared in such a way that it can be fed into computers. It is to be delivered to them several times each day. I question whether this accomplishes anything besides an increase in the cost of the litigation, but, in any event, it does indicate an attitude of counsel that they need computers to do what the jurors are expected to do in their heads.

Judge Newman solved the problem in the case before him by imposing a limit on the amount of time the plaintiff had to complete its case. He also indicated that

> . . . Cross-examination of any of plaintiff's witnesses, as to either liability or damages, will be expected to consume no more time than direct examination; if for cause shown, it is necessary to allow the defendant additional time for cross-examination, such additional time will not be charged to plaintiff's allowable time.

77 F.R.D. at 15.

We confront these questions at an earlier time than Judge Newman had occasion to consider them. Because I have advance notice that time restraints are needed, it is appropriate to deal with the matter before trial.

The following rules will govern the conduct of this trial.

## TIME LIMITS

The parties will be expected to conform to the following time limits and to marshall their evidence accordingly. These limits are subject to change if events at the trial

satisfy the court that any limit is unduly restrictive. It is my intention to allow each party sufficient time to present its case; I have no interest in speed for the sake of speed. Nonetheless, because I believe these limits are reasonable, counsel should not anticipate a liberal attitude in regard to their relaxation.

### Plaintiff's Case-in-Chief

Plaintiff's case-in-chief will be limited to 26 trial days, the time estimated by plaintiff.

### Cross-Examination of Plaintiff's Witnesses

Cross-examination of each witness will be limited to approximately the same length of time consumed by the direct examination.

### Defendants' Case-in-Chief

Defendants' case-in-chief will be limited to approximately the same time consumed by plaintiff's case-in-chief.

### Cross-Examination of Defendants' Witnesses

Cross-examination will be limited to approximately the same time as direct examination.

### Rebuttal and Sur-rebuttal, if Any

No limit can be set at this time, but the philosophy underlying the foregoing limits will apply.

## PROGRESS OF TRIAL

We will try this case approximately one month at a time. At logical points, we will recess to allow me time to try any criminal cases approaching Speedy Trial limits as well as to try some civil cases. This will enable me to set some firm trial dates in civil cases, with the domino effect that has. With this procedure, I hope the impact of this trial on the rest of my calendar can be significantly reduced.

If judicial resources were unlimited, the optimal procedure would be to finish a case without interruption. But resources are limited, and it is a matter of making the best use of them. Bench trials are commonly interrupted, and I see no reason why a jury trial cannot be interrupted as well. If a judge can remember the evidence, so can a jury. As far as hardship on the jury is concerned, a trial which takes place in segments might make it possible for some jurors to serve who otherwise would be unable to do so. For instance, a self-employed person who could not be away from his business continuously for several months might be able to serve if he is able to return to his business from time to time. On the other hand, some jurors might find it more difficult to serve if the commitment spans a longer period of time, even with interruptions. The fact is that whether the trial proceeds continuously or in segments, service on this case represents an undertaking far beyond what many jurors will be able to handle. It would not serve the interest of either party to require service by unwilling jurors. I intend to excuse any juror who indicates that he or she would experience a substantial hardship by serving. We have arranged for a venire large enough to include an adequate number able to serve.

This case is not unique in the problems it presents. Lengthy civil trials are becoming more frequent as the complexity of litigation increases, especially in the federal courts. It is becoming more common for parties in complicated antitrust, securities and patent litigation to demand trial by jury. Prominent members of the judiciary and the bar have recently expressed misgivings as to the appropriateness of jury trials in such extended and complex cases. The primary concerns are whether such extended service can be required of citizens summoned for jury duty and whether lay juries can reasonably be expected to comprehend the mass of technical material often presented in such trials. For these reasons, various commentators have suggested that it may be desirable to abridge the right to trial by jury in certain kinds of civil cases.

There is, in my opinion, substantial basis for these concerns. I believe the problem has come about in part because lawyers and judges have sometimes not made sufficient efforts to shorten and simplify these lengthy trials. There has been much attention to the elimination of wasteful pretrial activity, but only infrequent consideration

of expediting the trial itself. It is inherent in our concept of due process that a party will have a hearing adequate to determine the merits of his position. But nothing in the concept requires that an interested party be the sole arbiter of the time he will take to present his position. The right to due process of law does not entitle a litigant to monopolize the publically supported court system any more than the right to freedom of speech entitles a speaker to monopolize a public park.

It is obvious that without today's order, this trial would have been unmanageable. Its length would have been oppressive to the jury and the volume of material presented would have included much that is neither essential nor helpful. I believe that today's order will prevent this case from becoming another example cited by those who suggest it may be time to restrict the right to trial by jury.