**UNITED STATES of America, Plaintiff,**

**v.**

**Frank REAVES, Jr., and Harold Shapot, Defendants.**

**Crim. A. No. 85–44.**

United States District Court,
E.D. Kentucky,
Lexington Division.

July 1, 1986.

Jane Graham and Thomas Self, Office of U.S. Atty., Lexington, Ky., for plaintiff.

William E. Johnson, Frankfort, Ky., for Reaves.

John F. Lang, New York City and Richard Plymale, Lexington, Ky., for Shapot.

## OPINION

BERTELSMAN, District Judge:

Both the prosecution and the defendants in this criminal tax fraud case have challenged the authority of this Court to curtail the presentation of cumulative and time-wasting evidence by placing time limits on various stages of the trial.

### BACKGROUND

The indictment charges the defendants with setting up and participating in several spurious coal mining partnerships, not with the genuine intent of doing any mining, but solely for the purpose of providing themselves and others with fraudulent tax deductions against their earned income from other sources. When the time limits were set at a pretrial conference, there were three defendants. One pled guilty prior to trial.

Initially, the United States estimated the trial would take a month. Upon further inquiry, the court was convinced that this time was excessive. It was apparent to the Court that the prosecution intended to introduce numerous tax returns of various individuals and partnerships page by page, making little effort to organize the voluminous evidence into a meaningful pattern or streamline the presentation of the case by the use of charts or summary exhibits. *See* Fed.R.Evid. 1006.

Thus, the Court found itself confronted with a situation where it was convinced an excessive amount of its time was about to be consumed by a wasteful, duplicative, and inefficient method of introducing evidence. It was apparent that, although little of the evidence was strictly irrelevant to the issues in the case, only about half of the time estimated was necessary to present the issues. This was not a new situation.

It would seem that early in the career of every trial lawyer, he or she has lost a case by leaving something out, and thereupon resolved never again to omit even the most inconsequential item of possible evidence from any future trial. Thereafter, in an excess of caution the attorney tends to overtry his case by presenting vast quantities of cumulative or marginally relevant evidence. In civil cases, economics place some natural limits on such zeal. The fact that the attorney's fee may not be commensurate with the time required to present the case thrice over imposes some restraint. In a criminal case, however, the prosecution, at least in the federal system, seems not to be subject to such fiscal constraints, and the attorney's enthusiasm for tautology is virtually unchecked.

Thus, this court was once subjected to the calling of ten firemen in an arson prosecution to prove a house burned down. On another occasion, fifteen bank patrons were called to prove a bank was robbed by a masked marauder that no one could identify or describe, since he was heavily disguised. The only evidence against the defendant was that he was apprehended some weeks later with large quantities of bait money.

So it was that, at the early pretrial conference in this case, the court was all too familiar with the prosecutorial penchant to regard the omission of any job or title of possible evidence with the same horror as Scrooge regarded the expenditure of a shilling. Having experienced in the past the stoney-hearted indifference with which the prosecutors usually received the court's tearful entreaties concerning the state of its civil docket and the plight of those litigants unfortunate enough to have cases moldering there,[1] the court decided to take unilateral action to keep the trial of this case within reasonable bounds. Inspired by the example of Judge Leval of the Southern District of New York in the much publicized libel suit, *Westmoreland v. CBS*,[2] the Court entered a scheduling order which set time limits for the presentation of the various phases of the case.[3]

The scheduling order was designed to give the United States ten days to present its case in chief and to impose proportionate limits on the other phases of the trial.[4] The order worked well in practice. Actually, it was more than generous, the prosecution's case still being overlong. It was refreshing to see, however, how things started to move along as the prosecution's time began to run out. Suddenly, the prosecutors quickly reached the point with each witness and stuck to the issues, thus eliminating many objections, and the case became intelligible and interesting. Unfortunately, it ended in a mistrial because of the conduct of a witness.

## PRECEDENT

Although the inherent power of the court to manage its workload by placing reasonable time limits on trials is theoretically unchallengeable, precedent is sparse. Therefore, a published opinion marshalling the authorities and discussing the policy considerations seems appropriate.

"Recent opinions establishing time limits on trials have broken the barrier of novelty, but strict limits are still rare."[5] Yet, the power of a trial court to set trial time limits in the reasonable exercise of its discretion has uniformly been upheld by those courts that have addressed the matter. Most of the reported cases where this method has been employed are civil antitrust cases.[6] However, the applicability of these authorities to criminal cases has been recognized.[7] Indeed, because of the considerations mentioned above, the need to employ this device may be greater in many criminal cases than in civil cases.

Also, as has been stated, Judge Leval used this method in the *Westmoreland* case, although apparently he did not publish an opinion. In any event, no authority questioning the power of the Court to employ the device has been found, although the Court is confident the prosecutors in this case made the wires of Lexis and Westlaw sizzle in their attempts to find some.

As Judge Leval has said so well:

"I have been asked whether I am confident of the lawfulness of such a limita-

---

1. *See United States v. Algie,* 503 F.Supp. 783 (E.D.Ky.1980), *rev'd* 667 F.2d 569 (6th Cir.1982).

2. *See* Leval, *From the Bench,* Litigation, 7 (1985).

3. A copy of the Scheduling Order is reproduced in the Appendix.

4. This was done in terms of trial hours, calculating six hours to the day. As it turned out, this was unrealistically optimistic, since in practice with recesses, bench conferences, and other interruptions five actual trial hours makes a pretty full day.

5. Kirst, *Finding a Role for the Civil Jury in Modern Litigation,* 64 Judicature 333, 337 (1986). This Court believes that most of the

observations in this article are applicable to criminal cases.

6. *SCM Corporation v. Xerox Corporation,* 77 F.R.D. 10 (D.Conn.1977); *MCI Communications Corporation v. American Telephone and Telegraph Co.,* 85 F.R.D. 28 (N.D.Ill.1979), *aff'd as to this issue* 708 F.2d 1081, 1172 (7th Cir. 1983), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983); *Juneau Square Corp. v. First Wisconsin National Bank,* 475 F.Supp. 451 (E.D. Wis.1979).

7. *See United States v. Algie,* 503 F.Supp. 783, 793 (E.D.Ky.1980), *rev'd on other grounds,* 667 F.2d 569 (6th Cir.1982).

tion on trial. I know of no authority to the contrary and can see no reason why such an order should be struck down if the time allotments are reasonable. It is a common practice in the appeals courts to limit the number of pages of briefs, as well as the time for argument. Court time is a valuable and limited resource, and as the volume of litigation grows, the ability of the courts to render service to the public is increasingly threatened. I would think it most shortsighted to prohibit courts from imposing reasonable limitations on the duration of trials. On the other hand, an unreasonable limitation might well be found an abuse of discretion." [8]

## ANALYSIS

■ A theoretical basis for using the time limit method may be found in the venerable concept of the inherent power of the court to control its docket. This inherent power has been codified in Federal Rules of Evidence 403 and 611(a).

These Rules read, in pertinent part, as follows:

"**Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

"**Rule 611. Mode and Order of Interrogation and Presentation.**

(a) **Control by court.** The court *shall* exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) *avoid needless consumption of time*, and (3) protect witnesses from

harassment or undue embarrassment." (Emphasis added)

Fed.R.Evid. 403 recognizes the power and duty of the court to exclude cumulative evidence or evidence which consumes more time than its probative value justifies.[9] Rule 611 *commands* the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence, so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time."

It is fundamental that a court has the power and duty to manage its docket and the individual cases before it to "secure fairness in administration, [and] elimination of unjustifiable expense and delay." Fed. R.Evid. 102. Modern courts recognize that the court's time is "a public commodity which should not be squandered." D. Louisell and C. Mueller, *2 Federal Evidence* § 128 (1985). There is an unnamed party in every lawsuit—the public. Public resources are squandered if judicial proceedings are allowed to proliferate beyond reasonable bounds. The public's right to a "just, speedy, and inexpensive determination of every action" [10] is infringed, if a court allows a case, civil or criminal, to preempt more than its reasonable share of the court's time.

A court cannot rely on the attorneys to keep expenditures of time in trying a case within reasonable bounds. The perspectives of the court and the attorneys in trying a case differ markedly. A judge wants to reach a just result in the case and to do so expeditiously and economically. An attorney's primary concern is to WIN the case. If he believes he can win that case by proliferating the evidence of the favorable, but relatively uncontested matters so that the weaker aspects of the case will be camouflaged, it is asking too much of our fallen nature to expect him voluntarily to do otherwise.

8. Leval, *supra* note 2 at 8.

9. *See* extensive discussion in *U.S. v. Algie*, 503 F.Supp. at 793, *rev'd on other grounds*, 667 F.2d 569 (6th Cir.1982).

10. *See* Fed.R.Civ.P. 1.

Somehow the unfortunate trend has arisen among attorneys to make almost every case a BIG CASE. There is a tendency to want to present the evidence not once, but many times over, and to adduce needlessly cumulative evidence not only on the controverted issues but also on those which are all but uncontested. Advocates tend to confuse quantity of evidence with probative quality. Nothing lulls an attorney to the passage of time like the sound of his or her own voice. Few attorneys can tell you what time it is without describing how the clock was made.

Traditionally, judges—most of whom like this writer have been practicing attorneys themselves—have felt that the court should not interfere with an attorney's right to present a case however he saw fit. Indeed, I know of no judge who would not like to let the attorneys have as much time as they think they need to present their case. But the days when courts could afford that luxury have passed.

It has become apparent that courts must recognize that it is they, rather than the attorneys, who have a more objective appreciation of the time a case requires when balancing its needs against the exigencies of the court's docket. Courts cannot rely on the attorneys to object to needless consumption of time by adversaries. Usually, an attorney is willing to suffer through the presentation of his opponent, however redundant, if only he can have equal time.

Recent trends in litigation have brought courts to the realization that their dockets do not belong to the attorneys or litigants, nor even to the courts themselves, but to the public. It is not only in the setting of time limitations that this realization is manifesting itself, but also in such developments as the imposition of sanctions on counsel who improperly pursue unsubstantiated factual and legal positions.[11]

The liability insurance crisis—whether contrived or not—has made legislators, the media, the public and the courts poignantly aware of the burdens imposed on both private and public endeavors by meritless or unduly prolonged litigation. Enormous pressures have been generated to do something about this situation, and rightly so.

Civil jury trials have recently been suspended in federal courts due to the inability of the government to pay the jurors. Citizens of the United States were for a time denied their right to trial by jury in civil cases. Section 14 of the Constitution of Kentucky provides:

"All courts *shall be open,* and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, *denial or delay.*" (Emphasis added).

A similar right of access to the courts is implicit in the Constitution of the United States [12] and is essential to a free society.

For the first time in our history the federal courts—the cornerstone of the temple of liberty—were not open, at least not fully open. There occurred a major failure in the ability of our government to guarantee its citizens a fundamental constitutional right. No one contends that overly prolonged trials were the sole cause of this crisis, but certainly they were a substantial contributing factor. Even though civil jury trials have now been resumed, the crisis could recur, and crowded dockets and overly expensive litigation can still effectively deny citizens their crucial right of access to the courts. Excess expense can itself have this effect. Docket pressures and litigation expense have engendered proposals to curtail many ancient tort remedies. Since traditional methods of handling the caseload are breaking down, it is the obligation of the courts to adopt more novel approaches. Judges and courthouses cannot be multiplied indefinitely. Innovative ap-

11. Thus, it has recently been held that a trial court has no discretion to decline to impose sanctions, where the standard of F.R.Civ.P. 11 has been violated. *Albright v. The Upjohn Company,* 788 F.2d 1217 (6th Cir.1986).

12. *See, e.g., Ex parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

proaches to processing complex litigation are the order of the day.[13]

One method of controlling the ill effects of burgeoning litigation is the imposition of time limits, as the court has done here. Indeed, a thoughtful article unequivocally states: "All jury trials should have time limits substantially less than the time now required." [14]

Those courts which have imposed such time limits have chosen this method of implementing their duty to control their dockets, because frequently no particular item of evidence can be ruled to be irrelevant, although taken as a whole the volume of evidence is excessive. Also, although the court may be firmly convinced that the total mass of evidence proffered is unduly cumulative, it is at a disadvantage as compared to counsel in selecting the best evidence to delineate the issues.

Setting a reasonable time limit forces counsel to conform their zeal to the need of the court to conserve its time and resources. But, subject to the time limits imposed, counsel remain in control of the case. It is still counsel's case, although it must now be presented in a reasonable time. It is counsel rather than the court who decide what evidence is to be admitted and what is to be pruned. Numerous objections or *sua sponte* interruptions by the court to debate what evidence is repetitious or cumulative are avoided. Thus, the goal of preserving the court's resources is achieved while the traditional autonomy of counsel to present their own case, subject to the exigencies of that goal, is preserved. Properly streamlined, the case is more effective for the ascertainment of truth, as mandated by Fed.R.Evid. 611(a).

Judge Leval and this writer have both found that the method is highly successful.

"Given my experience in one long trial, this technique has considerable benefits—primarily five: It requires counsel to exercise a discipline of economy choosing between what is important and what is less so. It reduces the incidence of the judge interfering in strategic decisions. It gives a cleaner, crisper, better-tried case. It gives a much lower cost to the clients. Finally, it will save months of our lives.

"All counsel in the *Westmoreland* trial have told me they believe they tried their case better as a result of the time limit, and that it was shorter by a half than it would have been." [15]

The experience of this court is that the method of establishing time limits by a scheduling order works well both from the point of view of the court's docket, and also from that of the case to be tried which ends up being presented more efficiently and intelligibly.

■ This court holds that it has the power to impose reasonable time limits on the trial of both civil and criminal cases in the exercise of its reasonable discretion. Of course, the court must analyze each case carefully to assure that the time limits set are not arbitrary.

## APPENDIX

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF KENTUCKY

AT LEXINGTON

CRIMINAL ACTION NO. 85-44

United States of America, Plaintiff

vs.

Daniel Lieberman, et al., Defendants

SCHEDULING ORDER

BERTELSMAN, District Judge.

Having reviewed the record herein and having heard the statements of counsel at the pretrial conference on December 6, 1985, the court finds that, due to the exi-

---

13. For example, Judge Lambros has achieved remarkable success with his summary jury trials. *See* Lambros, *The Summary Jury Trial and Other Alternative Methods of Dispute Resolution,* 103 F.R.D. 461 (1984).

14. Kirst, *supra,* note 5 at 337.

15. Leval, *supra,* note 2 at 8.

gencies of the court's docket, pursuant to F.R.Ev. 611(a) and the inherent power of the court, it is necessary to impose the following time constraints on the parties in the trial of this case.

Therefore, the court being advised,

IT IS ORDERED as follows:

1. That the United States shall be allowed sixty (60) hours of trial time, commencing with the calling of the first witness, to present its case in chief;

2. That the defendants shall be allowed thirty (30) hours of trial time, commencing with the calling of their first witness, to present their case in chief;

3. That the United States shall be allowed six (6) hours for rebuttal, if any rebuttal is appropriate;

4. Time shall be computed as follows:

(a) Recesses shall not be counted, except for recesses necessitated by the United States not having previously furnished Jencks Act statements to the defendant, which shall be counted;

(b) The time taken to argue all objections made by a party, which are overruled by the court, shall be deducted from the objecting party's time. Time for objections which are sustained will not be excluded from the time of the proponent of the evidence;

5. Cross-examination of a witness called by a party is part of that party's case for computation of time. Absent exceptional circumstances, total time for cross-examination of any witness by all other parties cumulatively will be limited to time used on direct examination of that witness. For due cause shown, the court may allow additional time. Such additional time will ordinarily be deducted from the time of the cross-examiner allowed for the next stage of the case; and

6. All time limits provided for herein may be adjusted by the court, in its discretion.

This 12th day of December, 1985.