**In re GALAXY ASSOCIATES, Debtor.**

**GALAXY ASSOCIATES, Plaintiff,**

v.

**SHEFFIELD CORPORATION and Citytrust, Defendants.**

**Bankruptcy No. 5–83–00342.
Adv. No. 5–85–0026.**

United States Bankruptcy Court,
D. Connecticut.

Aug. 30, 1990.

See also, Bkrtcy., 114 B.R. 11.

Robert Slavitt, Lloyd S. Lowinger, Slavitt, Connery & Vardamis, Norwalk, Conn., for plaintiff.

Richard J. Buturla, Berchem & Moses, P.C., Milford, Conn., for defendants.

## MEMORANDUM AND SCHEDULING ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

This core adversary proceeding,[1] which commenced over five years ago, was reached for trial on August 1, 1990. On that date, the parties stated their respective positions in a preliminary hearing intended to establish the amount of time necessary to complete the evidentiary stage of the trial.

### I.

On December 23, 1981, the defendant Citytrust made a $5,000,000.00 loan to the plaintiff to finance the purchase and reno- vation of a condominium project. The loan was secured by a first mortgage on the project and a $400,000.00 letter of credit issued by Merchants Bank and Trust. In January, 1983, Citytrust declared itself insecure and called the letter of credit, which Merchants Bank paid on January 20, 1983. Subsequent negotiations between the plaintiff and Citytrust resulted in an April 7, 1983 Contract of Sale (the "Contract"), which provided that Citytrust would form a wholly owned subsidiary corporation to be known as Sheffield Corporation; that the defendant Sheffield would purchase the project, assume $3,692,616.67 of the plaintiff's mortgage obligation to Citytrust, complete the renovation and market the condominium units; and that sale proceeds would be applied first to reduce the principal on the mortgage, second to reimburse Sheffield for costs of completion, which were not to exceed $2,800,-000.00, and third to pay Citytrust interest, with any surplus to go to the plaintiff. Citytrust subsequently applied the $400,-000.00 from the letter of credit to the mortgage debt, thereby reducing the principal balance to $3,292,616.67.

On April 8, 1983, the plaintiff filed a petition under chapter 11 of the Bankruptcy Code. On May 11, 1983, the court approved the Contract, the plaintiff subsequently conveyed the project to Sheffield, and Sheffield completed the project.

On March 14, 1985, the plaintiff commenced the instant adversary proceeding, seeking an order requiring the defendants to turn over approximately $825,000.00 as money that should have been available from the sale of the condominium units.[2] The plaintiff's claim essentially falls into three areas, to wit: that the sale of the project produced a surplus which was consumed by Sheffield's inflated completion costs; that interest should have accrued on the letter of credit from the time it was issued until the $400,000.00 was credited to

---

1. On March 30, 1988, a pretrial order entered which determined that this court had core jurisdiction over this adversary proceeding under 28 U.S.C. § 157(b)(2)(E), (3). The parties have not challenged that determination.

2. Code § 542(b) provides in part that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee...."

the mortgage debt, and that that interest should have been considered part of the sale fund; and that the defendants should have placed all surplus funds in interest bearing accounts, and that that interest should also have been considered part of the sale fund. The defendants argue that the plaintiff is barred by the express language of the Contract from challenging any amount spent completing the project under $2,800,000.00 and that the plaintiff is not entitled to interest on sale proceeds or on the letter of credit.

After considering the arguments of both sides at the August 1 hearing, I concluded that only a few of the plaintiff's claims raise disputed questions of fact. The parties were accordingly advised at that time that I intended to limit the amount of time each side would have to offer evidence. On August 6th, during a telephone conference call, the parties were advised that they would each have five hours to offer evidence and cross-examine witnesses.

Prior to and at the time of that conference the plaintiff argued that it needed substantially more than five hours, possibly up to four days. If the plaintiff's estimate were adopted, the trial of this matter could take seven or eight days, as the defendants would be entitled to an equal amount of time to rebut the plaintiff's case. The request for more than five hours for each side is denied for the following reasons.

## II.

Rule 403 Fed.R.Evid. provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 611(a)(2) provides in part:

Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... avoid needless consumption of time....

Thus, Rule 403 recognizes the court's power to exclude evidence "which consumes more time than its probative value justifies," and Rule 611(a) mandates that the court control the presentation of evidence in a way that avoids the needless consumption of time. *United States v. Reaves*, 636 F.Supp. 1575, 1578 (E.D.Ky.1986). Because the public has an expectation that all cases will be speedily and efficiently resolved and other parties have matters to be heard, this court has an obligation to manage cases before it in a way that eliminates unjustifiable expense and delay. *Id.; SCM Corp. v. Xerox Corp.*, 77 F.R.D. 10, 13–14 (D.Conn.1977).

"It has never been supposed that a party has an absolute right to force upon an unwilling tribunal an unending and superfluous mass of testimony limited only by his own judgment and whim.... The rule should merely declare the trial court empowered to enforce a limit when in its discretion the situation justifies this...."

*SCM Corp., supra,* 77 F.R.D. at 14 (quoting 6 Wigmore, *Evidence* § 1907 (Chadbourn rev. 1976)). In certain circumstances, it is appropriate for the court to assign an aggregate time for trial and leave it to the parties to select the evidence with the most probative value which can be presented in that time frame. *Id.* at 13.

The issue of whether there is any surplus money from the sale of the condominium units after the deduction of completion costs initially turns on the language of paragraph 11 of the Contract, which provides:

PURCHASER shall complete the construction, renovation, improvements and marketing of the Premises at its own expense and commencing with the date of this Agreement shall expend therefor Two Million Eight Hundred Thousand Dollars ($2,800,000) (hereafter "the Completion Cost") provided, however, that the Completion Cost shall not include any salary or benefit costs attributable to any employee of Citytrust for services rendered relative to the Premises. Completion Cost shall include any amounts expended by PURCHASER relative to

the Premises and shall include expenditures made to date by PURCHASER for oil delivered to the Premises. All such monies spent shall be in PURCHASER's sole discretion and SELLER hereby waives any and all claims which it might have or make relative to PURCHASER's expenditure of the Completion Cost. PURCHASER shall not be obligated to spend Two Million Eight Hundred Thousand Dollars ($2,800,000); provided, however, PURCHASER shall be entitled to reimburse itself up to Two Million Eight Hundred Thousand Dollars ($2,800,000) pursuant to paragraph 12(a)(2) below, but in no event shall PURCHASER be entitled to reimburse itself more than Two Million Eight Hundred Thousand Dollars ($2,800,000)....

It is well settled in this circuit that "[a] party to a stipulation is not entitled to withdraw from its agreement unilaterally." *United States v. New England Teamsters and Trucking Industry Pension Fund,* 737 F.2d 1274, 1278 (2d Cir.1984). The Contract unequivocally specifies that Sheffield was entitled to expend up to $2,800,-000.00 and that the plaintiff waived any objection to expenditures up to that amount. The plaintiff is bound by that language, as "Courts do not unmake bargains unwisely made. Absent other infirmities, bargains ..., ... whether provident or improvident, are entitled nevertheless to sanctions of the law." *Robert Lawrence Assoc., Inc. v. Del Vecchio,* 178 Conn. 1, 21–22, 420 A.2d 1142 (1979). *See also Parks v. Baldwin Piano and Organ Co.,* 262 F.Supp. 515, 519 (D.Conn.1967) (the court is not permitted "to make a new contract for the parties or to insert protective conditions which the parties failed to provide for themselves.").

■ It is noted that the plaintiff's memoranda suggests that the disputed completion costs are administrative expenses and that notwithstanding ¶ 11, this court may determine the reasonableness of those items. That suggestion defies both logic and law. The plaintiff and Citytrust bargained for a procedure to eliminate any disputes that might arise over the costs of completing the condominium project. They then asked for and obtained an order from this court approving their agreement. The plaintiff may not now challenge costs as excessive administrative expenses. To hold otherwise would reduce this court's order to a nullity. Moreover, there is no merit to the position that those items are items of administrative expense. Code § 503(b)(1)(A) provides that administrative expenses include "the actual, necessary costs and expenses of preserving the estate...." After the project was sold to Sheffield, it was no longer property of the estate. The completion costs were therefore not incurred preserving the estate.

■ Thus, the sole question here with respect to the disputed completion costs is whether they were *completion costs* within the meaning of ¶ 11. With few exceptions that question is answered by reference to the plain language of ¶ 11 and the facts which are undisputed by the parties or a very short offer of evidence. Balanced against the relative lack of probative value, and possibly relevance, of evidence which the plaintiff might introduce on the majority of the disputed completion costs is the large amount of court time the plaintiff proposes to use. Under the circumstances of this case, allowing the parties to consume almost two weeks of court time cannot be justified. The same analysis applies with respect to the interest questions which are also answered by reference to the Contract and undisputed facts.

### III.

For the foregoing reasons, IT IS ORDERED that the parties are limited to five hours each in presenting their cases.